# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Manjot Kaur, | No. CV-26-00217-PHX-KML (ASB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Todd M. Lyons, et al., | |
| Respondents. | |

**TO THE HONORABLE KRISSA M. LANHAM, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is pro se Petitioner Manjot Kaur's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1)[1], filed on January 7, 2026. Petitioner is detained at San Luis Regional Detention Center and seeks release from immigration custody or a bond hearing. (*Id.*) For the reasons that follow, undersigned recommends the Petition be denied in part and granted in part.

## I. PROCEDURAL HISTORY AND BACKGROUND

Petitioner is a citizen of India who sought asylum at the U.S. border on or about November 30, 2024. (Doc. 1 at 2; Doc. 9 at 1.) Petitioner pleads in her Petition that she was a member of the Shiromani Akali Dal Amristar ("SADA") political party and "repeatedly attacked, beaten and threatened with death by members of India's ruling Bhartiya Janta Party (["BJP"])." (*Id.*) Petitioner further alleges that she fled to the United

---

[1] Citation to the record indicates documents as they are displayed in the District of Arizona's official Court electronic document filing system under Case No. CV-26-00217-PHX-KML (ASB).

States for safety and expressed her fear at the border. (*Id.*) According to Petitioner, "[a] U.S. asylum officer found [she had] a 'credible fear' of persecution" and she was placed in regular immigration proceedings. (*Id.*) Petitioner alleges that she has been in ICE detention since 2024, and as of the filing of her Petition, has been "imprisoned for over one year." (*Id.*) Petitioner further asserts that on March 25, 2025, she "asked an Immigration Judge for a bond hearing" which was denied because the court found it "lack[ed] jurisdiction over bond redetermination." (*Id.*) Petitioner alleges that she was "never given a chance to be heard[,]" that the "judge did not consider [her] individual circumstances[,]" that "no finding was made" that Petitioner was a flight risk or danger to the community, but rather that the "denial was automatic and categorical." (*Id.*)

In her Petition, Petitioner cites to her ties to the community in Baltimore, Maryland, where she will live with her husband if released. (*Id.* at 3.) Petitioner also cites to a "U.S. Citizen Financial Sponsor" who "guarantees [her] housing, food, and financial needs[.]" (*Id.*) Petitioner supports her Petition by including medical records from hospitals in India documenting her injuries from the attacks, a letter from SADA President Simranjit Singh Mann confirming her membership to the group and the threats against her, her lack of criminal history, and financial information from her "U.S. Citizen Financial Sponsor," among other personal documents. (*See* Doc. 1.)

Petitioner asserts three claims in her Petition, which the Court has previously summarized as:

> Petitioner contends her prolonged detention without a bond hearing is unlawful and unconstitutional and violates the Fifth Amendment. She also claims her detention serves no legitimate purpose because she is not a flight risk or danger to the community.

(Doc. 3 at 2.) Petitioner requested the following relief: (1) issue of writ of habeas corpus; (2) order an immediate release from detention under appropriate conditions or order the government to provide a bond hearing, where the government must prove by clear and convincing evidence Petitioner is a flight risk or a danger; and (3) award any other relief the Court finds just. (Doc. 1 at 5.)

Todd M. Lyons, Acting Director of Immigration and Customs Enforcement ("ICE")

and "Unknown Party," Warden of the San Luis Regional Detention Center (collectively, "Respondents") timely filed a "Response Petition for Writ of Habeas Corpus" (Doc. 9) on February 17, 2026. In their Response, Respondents argue that the Petition should be denied because Petitioner's detention is statutorily authorized and constitutional. (*Id.* at 2.) Respondents assert that Petitioner's detention is lawful pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), because Petitioner's immigration appeal remains pending before the Board of Immigration Appeals ("BIA") and Petitioner is not subject to an administratively final order of removal. (*Id.*) (relying on *Jennings v. Rodriguez*, 583 U.S. 281 (2018)). Respondents argue that Petitioner is subject to mandatory detention as an applicant for admission. (*Id.*) According to Respondents,

> When Petitioner presented herself to immigration officials, those officials properly determined that she was inadmissible and immediately began to remove her. As an inadmissible alien, Petitioner has no right to be present in the United States. Petitioner is statutorily ineligible for bond, and her detention is legal as there is no final order of removal.

(*Id.* at 4.)

On February 23, 2026, Petitioner filed a Notice with this Court titled "Evidentiary Updates for Petition for Writ of Habeas Corpus" containing various attorney/client correspondence and medical records from Petitioner's detention at San Luis Regional Detention Center. (Doc. 12.) Petitioner has not filed a Reply with the Court, and the time for such Reply has now elapsed.[2] (*See* Doc. 3.)

## II.    ANALYSIS

"The writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). Writ of habeas corpus relief extends to a person in federal custody if the petitioner can demonstrate he "is in custody in violation of the Constitution or laws or

---

[2]    Based on the Referral Order issued by this Court, Petitioner had 30 days from the date of service of Respondents' Answer to file a Reply. (Doc. 3 at 3.) Respondents filed their Answer ("Response Petition for Writ of Habeas Corpus") on February 17, 2026 and included a Certificate of Service to Petitioner, dated February 17, 2026. (Doc. 9.) Accordingly, based on the record before this Court, this Petition became ripe for ruling 30 days later, on March 19, 2026.

- 3 -

treaties of the United States."  28 U.S.C. § 2241(c)(3). Accordingly, federal courts have jurisdiction to grant writs of habeas corpus to noncitizens who are being unlawfully detained under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.") (citing *INS v. St. Cyr*, 533 U.S. 289, 301-303 (2001)); *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order") (citation omitted). Respondents do not dispute this Court's jurisdiction over considering Petitioner's prolonged detention. (*See* Doc. 9.)

Governing the detention of "applicants for admission" is 8 U.S.C. § 1225. The statute defines "applicants for admission" as "an alien present in the United States who has not been admitted" following inspection by immigration authorities. 8 U.S.C. § 1225. "As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of documentation, or "certain other aliens designated by the Attorney General in his discretion." *Id.*  Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

Respondents assert that Petitioner's detention falls under § 1225(b)(2) and undersigned sees no evidence to conclude otherwise. Pursuant to § 1225(b)(2)(A), a noncitizen who is not under a final removal order "shall be detained for a proceeding under section 1229a[3] of this title." Respondents argue that an alien subject to detention under §1225(b)(2) "must be detained[,] "that such detention is not unconstitutionally indefinite[,]" and "it is . . . clear that the statute and applicable regulations require

---

[3]   Under section 1229a, an immigration judge shall conduct proceedings for deciding the admissibility or deportability of an alien. The statute does not appear to advise or mandate further detention following a section 1229a determination.

Petitioner's detention without bond through the completion of [her] removal proceedings." (Doc. 9 at 3) (citing *Jennings*, 583 U.S. at 302). It appears Respondents essentially conclude that because Petitioner is an arriving noncitizen, her detention is justified indefinitely. (*See id*.) Because at least one District Judge of this Court has disagreed with that position, undersigned assumes the analysis does not end there and addresses Petitioner's due process rights. *See Avakian v. Cantu,* No. CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (rejecting respondents' reliance on § 1225(b) and *Jennings*, 583 U.S. at 281, without addressing any constitutional considerations).

## A. Entitlement to Due Process Claim

The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Beginning with that fundamental principle, undersigned will now briefly address the developing body of caselaw addressing whether a bond hearing is available to immigrants detained pursuant to 1225(b)(2). *See Rodriguez v. Robbins ("Rodriguez III")*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 583 U.S. at 287 ("[I]n a series of decisions since 2001, the Supreme Court and [Ninth Circuit] have grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.")[4]

The Supreme Court addressed whether applicants for admission into the United States are afforded due process rights in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In *Thuraissigiam*, the Supreme Court rejected an arriving noncitizen's due process rights, finding that "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 140. In

---

[4]     *See Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1173-1176 (D. Ariz. 2020) for a comprehensive discussion of the background law and series of cases decided by the Ninth Circuit and Supreme Court.

interpreting and applying *Thuraissigiam* to petitioners like Kaur, who challenge *detention* rather than *admission*, district courts have taken essentially two different approaches. *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) (outlining the two ways district courts have applied *Thuraissigiam* to detention challenges).

Some district courts have denied or dismissed habeas petitions outright from noncitizens challenging detention on due process grounds. *See, e.g., Chavez v. Noem,* --- F.Supp.3d ---, No. CV-26-00323-PHX-MTL-JFM, 2026 WL 381618, at *3 (D. Ariz. Feb. 9, 2026) ("These procedures represent the due process as provided by Congress in statute. Petitioner is entitled to nothing further under the Constitution.") (denying petitioner's § 2241 petition where petitioner "had been unlawfully present in the United States" since 2022); *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1177 (D. Ariz. 2020) (discussing the *Rodriquez* progeny and finding under the current Ninth Circuit precedent "it is constitutionally permissible to require Petitioner to remain in custody for the duration of his removal proceeding"); *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as [p]etitioner is concerned, whatever procedure Congress has authorized is sufficient due process.").

The majority of district courts in the Ninth Circuit have utilized a more "case-specific," or "as-applied," approach to due process challenges from noncitizens disputing their prolonged detention in habeas corpus matters. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019); ("[T]he Court joins the vast majority of other district courts to conclude that unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process."); *Gomez v. Doe*, No. CV 25-03255 PHX JJT (CDB), 2025 WL 3269886, at *11 (D. Ariz. Nov. 3, 2025) (holding that "[t]he Fifth Amendment's Due Process Clause extends to all persons, regardless of status" and applying a balancing test to determine what procedural safeguards apply to a noncitizen challenging his detention under § 1225(b)(2)(A) pursuant to § 2241), *report and recommendation adopted sub nom. Gomez v. Unknown Party*, 2025 WL 3269055 (D. Ariz. Nov. 24, 2025); *Avakian v. Cantu,* 2026 WL 746351, at *2 (applying due process considerations to petitioner's prolonged

detention under § 1225(b)); *Cong v. Noem*, No. 25-CV-3730-GPC-DEB, 2026 WL 76566, at *3 (S.D. Cal. Jan. 9, 2026) ("[M]ost courts have opted for an alternative, as-applied approach [in considering *Thuraissigiam*].") (collecting cases from the Ninth Circuit); *Sadeqi,* 809 F. Supp. 3d at 1093 ("This [c]ourt agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing.") (recognizing the distinction in applying *Thuraissigiam* between an arriving alien's due process rights to *admission*, circumscribed in *Thuraissigiam,* rather than limiting a petitioner's ability to challenge their *detention*) (collecting cases). Moreover, the Ninth Circuit expressed in the most recent *Rodriguez* decision, following remand from the Supreme Court in *Jennings v. Rodriguez[5],* that "[w]e have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Undersigned recommends that the Court join the majority of courts in this Circuit, including a recent order out of this District, in holding that a prolonged detention under § 1225(b) may eventually give rise to due process issues. *See Avakian v. Cantu,* 2026 WL 746351, at *2 (rejecting respondents' objections that an arriving noncitizen may be detained through the completion of their removal proceedings, finding that the Supreme Court did not reach the constitutional analysis in its decision in *Jennings* and therefore did not preclude whether the denial of a bond hearing under § 1225(b) could violate the Due Process Clause).

**B. *Banda* Test (Whether Petitioner's Detention Has Become Unreasonable)**

Courts apply a multifactor test to determine whether § 1225(b) detention has become unreasonable. *See Banda*, 385 F. Supp. 3d at 1118. While courts differ slightly on the test applied, they are substantively the same – balancing petitioner's interest, government interest, and fault on either party. *See Baishymyrov v. Warden of Golden State*

---

[5]    583 U.S. at 281.

*Annex Det. Facility*, No. 1:25-CV-01658-DMC-HC, 2026 WL 145644 (E.D. Cal. Jan. 20, 2026) (applying the *Lopez*[6] test to determining the reasonableness of a § 1225(b) detention); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (applying the *Matthews v. Elridge*[7] test to assess whether prolonged detention has violated due process in 8 U.S.C. § 1226(c) context). Undersigned will apply the *Banda* test based on the most recent Report and Recommendation adoption to come out of this District, but similarly notes that "[u]nder either test, Petitioner is entitled to a bond hearing." *See Avakian v. Rokosky,* No. CV-26-00104-PHX-SHD, slip op. at 21 (D. Ariz. Feb. 24, 2026), *report and recommendation adopted sub nom. Avakian v. Cantu*, 2026 WL 746351 (D. Ariz. Mar. 17, 2026). Under *Banda*, courts will balance the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." 385 F. Supp. 3d at 1118 (quoting *Jamal v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Regarding the first factor, total length of detention, Petitioner has been in ICE detention since she arrived in the United States on November 30, 2024. (Doc. 1 at 2; Doc. 9 at 1.) Thus, Petitioner has been detained for at least fifteen months as of the date of this Report and Recommendation. Federal courts have found that prolonged detention in a similar (and shorter) range of time leans towards granting a bond hearing. *See Lopez*, 631 F. Supp. 3d at 879 ("Petitioner has been in immigration detention . . . approximately one year. District courts have found shorter lengths of detention pursuant to § 1226(c) without

---

[6] "To determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022).

[7] "[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).

a bond hearing to be unreasonable."); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citations omitted). Accordingly, Petitioner's over fifteen-month detention weighs towards granting a bond hearing.

The second factor, likely duration of future detention, also weighs towards Petitioner's position. On September 24, 2025, an Immigration Judge denied Petitioner's applications for relief and ordered Petitioner removed to India. (Doc. 9 at 2.) Petitioner appealed that decision and the appeal is pending before the Board of Immigration Appeals ("BIA"). (*Id.*) Courts have found that pending administrative and possible Ninth Circuit appeals can be "sufficiently lengthy" such that it favors Petitioner's ability to be heard. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *7 (E.D. Cal. July 25, 2025) (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)); *see also Banda*, 385 F. Supp. 3d at 1119 ("Petitioner only recently filed his appeal of the IJ's removal order with the BIA. If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer.") (citing *Jamal*, 358 F. Supp. 3d 853, at 859); *see also Arechiga v. Archambeault*, No. 2:23-CV-00600-CDS-VCF, 2023 WL 5207589, at *4 (D. Nev. Aug. 11, 2023) ("It is anyone's guess how long it will take the BIA to reconsider [the] petition . . . or how long subsequent appeals of that decision might take.") While the Court will not "guess" how long the pending appeals may take to resolve, the fact that Petitioner is at the beginning of her appeals process is instructive. *See Banda*, 385 F. Supp. 3d at 1119. Accordingly, the potential length of detention during Petitioner's administrative and possible Ninth Circuit appeals process weighs towards granting Petitioner a bond hearing.

In the third factor, the Court considers the conditions of detention where the petitioner is detained. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal*, 358 F. Supp. 3d at 860). Here, Petitioner is confined at the San Luis Regional Detention Center in Arizona, a facility operated by a private corrections company LaSalle Corrections.[8] San Luis Regional Detention Center is a medium-security facility, housing immigration detainees awaiting trial, deportation, and immigrants serving sentences following a criminal conviction. *See Cardin Alvarez v. Rivas*, No. CV 25-02943 PHX GMS (CDB), 2025 WL 2898389, at *19 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part sub nom. Alvarez v. Rivas*, No. CV-25-02943-PHX-GMS, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). The Center allows no-contact visitation limited to one day per week, no electronic devices are allowed, all visitors are searched, legal mail is inspected, and contact with legal counsel is limited. *Id.* at n.21.

Petitioner has provided extensive medical records documenting her polycystic ovarian syndrome and the challenges she has faced receiving her medication in custody. (*See* Doc. 12.) Petitioner has been consistently seeking treatment at San Luis Regional Detention Center and has been unable to receive her needed medication. (*See id.*) According to Petitioner, she has gone without her medication for several months resulting in "missed menstrual cycles, breast pain and headaches." (*Id.* at 10.) The surveillance, oversight by a private correctional company, and alleged absence of needed medication resemble conditions of "penal confinement" and therefore favor granting a bond hearing. *See Banda*, 385 F. Supp. 3d at 1119.

In the fourth and fifth factors, the Court considers delays in the removal proceedings caused by the detainee or the government. Here, the factors are likely neutral as applied to Petitioner, because there is no evidence in the record that either Petitioner or Respondents

---

[8]    https://www.jailexchange.com/private-prisons/arizona/san-luis-regional-detention-center/inmatesearch, last accessed March 23, 2026; https://lasallecorrections.com/, last accessed March 23, 2026.

have caused any delay in the removal proceedings. (*See* Docs. 1, 9, 12.)

Under the sixth factor, the Court looks at the likelihood that the removal proceedings will result in a final order of removal. The Court finds this factor is also neutral. *See Banda*, 385 F. Supp. 3d at 1118. While this Court cannot presume what the BIA or Ninth Circuit may decide on Petitioner's asylum claim, the record before this Court appears to indicate Petitioner has at least a viable case to plead. (*See* Docs. 1, 12) (noting that USCIS made a "credible fear of persecution" determination).

Undersigned finally makes note of similarly situated petitioners. Based on the record before this Court, Petitioner arrived at a U.S. port of entry and immediately surrendered herself to border officials claiming asylum. (*See* Docs. 1, 9.) Rather than attempt to evade border enforcement, Petitioner cooperated with officials. (*Id.*) In similar scenarios, courts appear to take into consideration when petitioners enter the United States as an "arriving" noncitizen consistently claiming asylum when determining whether to grant a bond hearing. *See Avakian v. Rokosky,* slip op. at 18 ("Logically, if due process affords criminal aliens under orders of removal a bond hearing if their detention becomes 'unreasonable,' notwithstanding that their detention is mandatory, then non-criminal aliens should also be afforded this due process protection."); *see also Sufiiarov v. Warden, Otay Mesa Det. Ctr.,* No. 25-CV-3265-LL-DDL, 2026 WL 26079, at *1, 5 (S.D. Cal. Jan. 5, 2026) (granting bond hearing to petitioner who arrived to the United States through an appointment seeking asylum); *Sadeqi,* 809 F. Supp. 3d at 1093 (granting bond hearing to petitioner who arrived to the United States via port of entry and immediately claimed asylum); *c.f. Chavez v. Noem,* 2026 WL 381618, at *3 ("[A] person who entered the United States illegally and is clearly and beyond a doubt not entitled to admission, is subject to mandatory detention") (denying a bond hearing for petitioner detained pursuant to § 1225(b)(2)(A) in part because they had been "unlawfully present in the United States" for almost three years prior to detention).

III.   **CONCLUSION AND REMEDY**

With three factors weighing in Petitioner's favor and three factors neutral,

undersigned recommends that the District Judge find that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided with a bond hearing. *See Rodriguez v. Marin*, 909 F.3d at 256 (expressing "grave doubts" that prolonged detention could not raise constitutional concerns).

In addition to a bond hearing, Petitioner requests immediate release from detention. (*See* Doc. 1.) However, she has not provided relevant support for such a position. (*See id.*) Additionally, courts in this Circuit have found in situations similar to Petitioner's that a bond hearing, instead of immediate release, is the appropriate remedy. *See Lopez*, 631 F. Supp. 3d at 882-883 ("The [c]ourt finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release.") (collecting cases).

Undersigned therefore recommends that the District Judge join other District Courts in ordering that Petitioner be given a bond hearing before a neutral adjudicator that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See, e.g., Banda*, 385 F. Supp. 3d at 1121; *Arechiga*, 2023 WL 5207589, at *4-5; *Sufiiarov,* 2026 WL 26079, at *1, 5; *Sadeqi,* 809 F. Supp. 3d at 1093; *Lopez*, 631 F. Supp. 3d at 882-883; *Abdul-Samed,* 2025 WL 2099343, at *7.

## RECOMMENDATION

Accordingly,

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) be **granted in part and denied in part** as follows:

1. Undersigned recommends that the Court **grant** Petitioner's request for a bond hearing and order that, within **thirty (30) days** of the date her Petition being granted, Petitioner be afforded a bond hearing before a neutral adjudicator at which hearing the government must bear the burden of showing that Petitioner should not be released on bond because she is a flight risk or a danger to the community; and

2. It is recommended all other forms of relief in the Petition, including an order directing Petitioner's immediate release, be **denied**.

## EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 23rd day of March, 2026.

Honorable Alison S. Bachus
United States Magistrate Judge

- 13 -